IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIBERTY INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 15-332-LPS |
| | ) | |
| MAGDA Y. KORN AND | ) | |
| RICHARD J. KORN, | ) | |
| | ) | |
| Defendants. | ) | |

Daniel A. Griffith, Kaan Ekiner, WHITEFORD, TAYLOR & PRESTON, L.L.C., Wilmington, DE.

     Attorneys for Plaintiff.

Jeffrey S. Goddess, ROSENTHAL, MONHAIT & GODDESS, P.A., Wilmington, DE.

     Attorney for Defendant Magda Y. Korn.

Gary S. Nitsche, WEIK, NITSCHE, DOUGHERTY, & GALBRAITH, Wilmington, DE.

     Attorney for Defendant Richard J. Korn.

**MEMORANDUM OPINION**

September 27, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.      INTRODUCTION[1]

Plaintiff, Liberty Insurance Corporation ("Liberty"), filed suit against Defendants, Magda Y. Korn ("Ms. Korn") and Richard J. Korn ("Mr. Korn").  Liberty seeks a declaratory judgment that it is not obligated, under the homeowner's insurance policy it issued to Ms. Korn, to defend and indemnify her in a lawsuit filed against her by Mr. Korn in the Superior Court of the State of Delaware (the "Underlying Action" or "Underlying Complaint").[2]

Before the Court are cross-motions for summary judgment filed by Liberty and Ms. Korn. (D.I. 7, 12)  For the reasons stated below, the Court will deny Liberty's motion for summary judgment and grant Ms. Korn's motion for summary judgment.

## II.     BACKGROUND

Mr. and Ms. Korn were formerly married and were divorced on May 18, 2012.  (D.I. 1 at ¶ 8)  The Underlying Complaint alleges that Ms. Korn took a portable hard drive from Mr. Korn's home approximately one month after the divorce and provided it to the New Castle County Police Department, believing it contained child pornography.  (*Id.* at ¶ 9-10)  Thereafter, police obtained a search warrant and seized Mr. Korn's personal computer, which contained in excess of 25 images of child pornography.  (D.I. 14 at 71)  Mr. Korn was arrested on January 14, 2013 and was charged with 25 felony counts of dealing in child pornography, carrying a potential prison sentence of 50 to 625 years.  (D.I. 1 at ¶ 11)  On July 14, 2014, following trial, he was

---

[1]Unless otherwise indicated, all facts are taken from the supporting briefs submitted by the parties and the case record.

[2]*Richard J. Korn v. Magda Y. Korn*, Superior Court of the State of Delaware, New Castle County, C.A. No. N14C-12-042-PRW.

1

acquitted. (*Id.*) While child pornography images were found on his computer, along with unillustrated erotic stories featuring children, the State was unable to prove beyond a reasonable doubt that Mr. Korn had actually viewed the images, which would have been required for a conviction. (D.I. 14 at 25-26)

Mr. Korn filed the Underlying Complaint against Ms. Korn on December 4, 2014, alleging malicious prosecution, defamation, abuse of process, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). (*See* D.I. 9 Ex. A) The Underlying Complaint centers on Ms. Korn's alleged misconduct in taking the hard drive, giving it to the police, and telling them she believed it contained child pornography. (*Id.* at ¶¶ 4-5) Mr. Korn claims loss of reputation, lost wages and earning capacity, severe mental anguish and emotional distress, loss of relationships with his minor daughters, expenses (medical, psychiatric and psychological), shame, embarrassment, and personal humiliation. (*Id.* at 8) He seeks attorney's fees, consequential damages, and punitive damages. (*Id.*)

Ms. Korn, through counsel, notified Liberty of the Underlying Action on December 17, 2014, to which Liberty responded with a Reservation of Rights letter. (D.I. 1 at ¶ 13; D.I. 14 at 52-58) On April 27, 2015, Liberty filed this suit here in the District of Delaware, seeking a declaratory judgment that it has no duty to defend or indemnify Ms. Korn in the Underlying Action.[3] (D.I. 1) The parties completed briefing on their cross-motions for summary judgment on January 6, 2016. (*See* D.I. 9, 11, 13, 16, 18) In response to a subsequent Court order (D.I. 19), the parties filed supplemental letter briefs (D.I. 20, 21, 22) in June 2016.

---

[3]Mr. Korn was named as a Defendant as an interested party pursuant to the Delaware Declaratory Judgment Act, Del. Code Ann. tit. 10, § 6511. (*See id.* at p.2)

III.   **LEGAL STANDARDS**

A.   **Motion for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  An assertion

that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing

to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for the purposes

of the motion only), admissions, interrogatory answers, or other materials," or by "showing that

the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come

forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation omitted).  The

Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,*

530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

3

allegations or suspicions to show the existence of a genuine issue") (internal citation omitted).

However, the "mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a

scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a

motion for summary judgment; there must be "evidence on which the jury could reasonably find"

for the non-moving party. *Anderson*, 477 U.S. at 252.

**B.    Insurer's duty to defend**

In determining whether an insurer has a duty to defend an action against its insured,

Delaware courts apply the following principles:

> (a) where there exists some doubt as to whether the complaint
> against the insured alleges a risk insured against, that doubt should
> be resolved in favor of the insured;
>
> (b) any ambiguity in the pleadings should be resolved against the
> carrier; [and]
>
> (c) if even one count or theory of plaintiff's complaint lies within
> the coverage of the policy, the duty to defend arises.

*Cont'l Cas. Co. v. Alexis I. DuPont Sch. Dist.*, 317 A.2d 101, 105 (Del. 1974). Once the duty to

4

defend is triggered by at least one count, the duty applies to "the entire suit." *See Consol. Rail Corp. v. Liberty Mut. Ins. Co.*, 2005 WL 697943, at *3 (Del. Super. Ct. Mar. 16, 2005) ("[T]he duty to defend extends to all causes of action in a complaint as long as one cause of action is potentially covered.").

## IV.   DISCUSSION

For the reasons stated below, the Court finds that: (1) it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332; (2) Liberty's duty to defend Ms. Korn is triggered by at least one count of the Underlying Complaint; and (3) the Court cannot definitively state at this stage whether Liberty will have a duty to indemnify Ms. Korn.

### A.   Subject Matter Jurisdiction

Liberty contends that the basis for this Court's subject matter jurisdiction is diversity, pursuant to 28 U.S.C. § 1332. (*See, e.g.*, D.I. 20) Liberty stated in its complaint that it is an Illinois corporation (*see* D.I. 1 at ¶ 4), but Ms. Korn questioned this contention and produced documentation to support her doubts (*see* D.I. 13 at 6 n.14; D.I. 14 at 60).

The Court must dismiss an action if it determines at any time that it does not have subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Accordingly, to determine if the parties to this case are diverse, the Court ordered additional briefing relating to the requirements of § 1332: citizenship and the amount in controversy. (*See* D.I. 19-22) Based on these submissions, the Court is persuaded that the requirements for diversity jurisdiction are met. Plaintiff, "Liberty Insurance Corporation," is incorporated in Illinois and has its principal place of business in Massachusetts. (*See* D.I. 20 Ex. B; D.I. 22 Ex. A) Defendants are citizens of Delaware. (D.I. 1 at ¶¶ 5-6)

The Court also finds that this case meets the $75,000 amount in controversy requirement. When the amount in controversy is not explicitly claimed, courts may consider the insurance policy limits in determining whether the underlying action "might result in an award exceeding the jurisdictional amount." *Manze v. State Farm Ins.*, 817 F.2d 1062, 1068 (3d Cir. 1987). "Indeterminacy of the amount to be recovered is . . . not sufficient to defeat diversity jurisdiction." *Jumara v. State Farm Ins.*, 55 F.3d 873, 877 (3d Cir. 1995) (finding amount in controversy requirement was satisfied when serious injuries were alleged and potential insurance recovery exceeded jurisdictional amount).

While the Underlying Complaint does not specify a dollar amount for damages, it seeks compensation for lost wages, lost earning capacity, severe mental anguish, and medical and psychiatric expenses, in addition to attorney fees, consequential damages, and punitive damages. (*See* D.I. 9-1 at 9)  Based on the extensive damages sought, it appears that the Underlying Action might result in an award exceeding $75,000.  Accordingly, the Court finds that the present action satisfies the amount in controversy requirement.

Thus, the Court finds that it has subject matter jurisdiction over this case pursuant to § 1332.

### B.    Duty to Defend

As stated above, an insurer has a duty to defend an entire suit if at least one count of the complaint triggers coverage.  Ms. Korn's policy provides for liability coverage of up to $500,000 for each "occurrence" that causes either "bodily injury" or "property damage." (D.I. 14 at 53) An "occurrence" is defined as an "accident." (*Id.*)  "Bodily injury" is defined as "harm, sickness, or disease, including required care" (D.I. 14 at 53), as long as it is not "expected or intended" by

6

the insured (*id.* at 54, 56).

The Underlying Complaint contains some counts alleging intentional conduct and other counts alleging negligent conduct.  For the reasons stated below, the Court finds that at least one count of the Underlying Complaint triggers Liberty's duty to defend by  meeting the requirements of an alleged "occurrence" causing "bodily injury."

### 1.    The intentional counts of the Underlying Complaint

Liberty argues that the counts of malicious prosecution, abuse of process, and IIED do not qualify as "occurrences" under the policy.  (D.I. 9 at 10)  An "occurrence" is defined as an "accident."  Under Delaware law, "accident" exclude intentional acts.  *See Camac v. Hall*, 698 A.2d 394, 396 (Del. 1996) (citing *State Farm Fire & Cas. Co. v. Hackendorn*, 605 A.2d 3, 7-8 (Del. Super. Ct. 1991)) (defining "accident" to mean event unforeseen by victim or outcome unintended by insured).  Since the foregoing counts allege intentional and malicious conduct on the part of Ms. Korn, Liberty argues that they cannot be considered "occurrences" under the policy.  (D.I. 9 at 10-11)  The Court agrees that these three counts do not trigger a duty to defend.[4]

### 2.    The negligence counts of the Underlying Complaint

The counts of defamation and NIED sound in negligence and may count as "occurrences" as defined in the policy.  Liberty concedes that these counts do not describe intentional acts.  (D.I. 16 at 3, 10)  However, Liberty argues that these counts nevertheless fail to trigger the duty

---

[4]The parties disagree on whether a claim for IIED must be considered an intentional act or may also be based on a reckless act.  As discussed below, two other counts of the complaint – defamation and NIED – sound in negligence and will be considered "occurrences" under the policy.  Accordingly, the Court does not need to decide whether the IIED count may refer to reckless conduct.

to defend because the alleged actions did not cause "bodily harm" to Mr. Korn as defined in the policy. (D.I. 16 at 5) The Underlying Complaint alleges various damages resulting from the defamation and NIED counts. (*See* D.I. 9-1 at 6, 9) The question thus narrows to whether any of the damages alleged by Mr. Korn are "bodily injuries" under the policy.

The policy defines "bodily injury" as "bodily harm, sickness or disease, including required care." (D.I. 14 at 53) Liberty argues that the term "bodily injury" does not encompass psychological or emotional damages. (D.I. 9 at 12) Mr. Korn claims he has suffered heart palpitations and chest pain, which would be "bodily harm," as well as anxiety, depression, and adjustment disorder, which he argues should constitute "sickness" or "disease" under the policy. (D.I. 11 at 14) Ms. Korn agrees that Mr. Korn's symptoms are sufficient to satisfy the policy's definition of "bodily injury." (D.I. 13 at 11-12) Because the Court finds sufficient evidence of alleged physical damages, which is sufficient to trigger Liberty's duty to provide coverage, the Court need not decide whether the alleged emotional and psychological harm should be considered "bodily injury."

The parties also disagree about whether the Court may look beyond the four corners of the Underlying Complaint in determining whether the allegations trigger Liberty's duty to defend. Ms. Korn argues that there is no absolute rule that limits courts to the allegations in the complaint. (D.I. 18 at 8) Mr. Korn states that the determination "does not extend beyond the express language of the insurance policy or beyond the four corners of the complaint." (D.I. 11 at 16) However, his brief later refers to medical records to argue that he suffered physical harm. (*Id.* at 17) Liberty argues for the four corners limitation and calls Ms. Korn's reference to the record "a brazen attempt to circumvent the appropriate scope of review." (D.I. 16 at 2)

8

The Delaware Supreme Court has explained that a court should typically rely on the complaint itself in these types of matters, because "the determination of whether a party has a duty to defend should be made at the outset of the case, both to provide the insured with a defense at the beginning of the litigation and to permit the insurer, as the defraying entity, to control the defense strategy." *Am. Ins. Grp. v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 829 (Del. 2000). Thus, courts typically consider the record only when it appears helpful to do so, given the particular circumstances of the case. For example, in *Premcor Ref. Grp., Inc. v. Matrix Serv. Indus. Contractors, Inc.*, 2009 WL 960567, at *6 (Del. Super. Ct. Mar. 19, 2009), the Court chose to limit the scope of its analysis to the underlying complaints because it was unclear whether the record in the underlying matters would be helpful in its analysis of that particular case. Conversely, in *Am. Ins. Grp.*, 761 A.3d at 829, the Court elected to look at the record in a case where the underlying litigation had already been settled and a demand for defense was made late in the process. *See also Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 421 (Del. 1994) (opting to use factual record to analyze insured's actual conduct, and not merely allegations of underlying complaint, in assessing duty to indemnify). Given that the "indemnitee's actual wrongdoing or lack thereof" had already been determined by the Court, the Supreme Court found that this, rather than "a third-party plaintiff's allegations, should be determinative." *Id.*

Thus, while the four-corners guideline encourages definition of the parties' roles and responsibilities as early and efficiently as possible, it does not restrict a court from referring to the record when doing so would be useful to its analysis. *See Camac v. Hall*, 698 A.2d 394, 397 (Del. Super. Ct. 1996) (ruling on coverage dispute "[a]fter a review of the entire record"); *see*

9

*also Nationwide Mut. Fire Ins. Co. v. Smith*, 1998 WL 433941, at *4 (Del. Super. Ct. Apr. 2, 1998) (deciding summary judgment motion in coverage dispute using facts from record).

Here, the Court finds it appropriate and helpful to consider the record, particularly the medical evidence indicating that Mr. Korn complained of physical symptoms such as heart palpitations and chest pain. (*See* D.I. 14 at 27-46) Moreover, even if the Court limits itself to the four corners of the complaint, Mr. Korn's request for "medical, psychiatric and psychological expenses" (D.I. 9 Ex. 1 at 6, 9) creates, at minimum, an ambiguity which must be resolved against Liberty, and in favor of Ms. Korn, at this stage. *See Cont'l Cas. Co.*, 317 A.2d at 105.

For these reasons, the Court concludes that the Underlying Action alleges negligent conduct by Ms. Korn which caused physical injury to Mr. Korn, thus satisfying the policy's requirement of an "occurrence" causing "bodily injury." Accordingly, the Court finds that Liberty does have a duty to defend Ms. Korn in the Underlying Action.

## C.    Duty to indemnify

"[A]n insurer's duty to defend is broader than the substantive coverage afforded under its policies." *Charles E. Brohawn & Bros. v. Emp'rs Commercial Union Ins. Co.*, 409 A.2d 1055, 1058 (Del. 1979). If Ms. Korn is found liable for intentional conduct in the Underlying Action, then Liberty would not be required to indemnify her for that conduct; and if she prevails in the Underlying Action, then no indemnification would be needed. *See Deakyne v. Selective*, 1998 WL 437138, at *1 (Del. Super. Ct. Apr. 29, 1998) (finding that Court could not make definitive ruling on indemnification before underlying litigation had been concluded). However, if Ms. Korn is found liable for negligent conduct, Liberty may be required to indemnify her. Since Liberty's responsibilities depend on the outcome of the Underlying Action, the Court cannot

definitively state that Liberty is free of any duty to indemnify Ms. Korn under any circumstances. *See id.* ("[I]t is at least theoretically possible that the underlying tort claim might be resolved on some . . . basis which would raise the possibility of indemnification.  Since this possibility exists the court cannot now rule that the plaintiff is not under any circumstances entitled to indemnification.").

## V.   CONCLUSION

For the reasons given above, the Court will grant Ms. Korn's motion for summary judgment and deny Liberty's motion for summary judgment.  An appropriate Order follows.